B. W. OWENS V. NAVARRO COUNTY LEVEE IMPROVEMENT

DISTRICT NO. 8 ET AL.

No. 4351.   Decided February 17, 1926.

(280 S. W., 532).

**1.—Charge—Overflowing Land—Damages.**

An instruction denying recovery of damages for causing overflow of land if the jury could not distinguish between that caused by the construction (by an improvement district) casting water on plaintiff's land and that which, without such construction, would have resulted from natural high water, was erroneous. It might be understood as requiring mathematical certainty as to the relative amounts of damage—the rule being that recovery is denied only when that recoverable is wholly left to speculation and conjecture. (Pp. 271, 272.)

**2.—Same—Special Issues.**

Special issues left to the jury should be submitted distinctly and separately, not intermingled with each other. (P. 272.)

**3.—Charge—Burden of Proof—Undue Emphasis.**

Instructions considered are held erroneous in giving undue prominence, by repetition, to placing the burden of proof on plaintiff—so far as to indicate doubt in the mind of the judge as to the sufficiency of the evidence. (P. 273.)

Questions certified from the Court of Civil Appeals for the Tenth District, in an appeal from Navarro County.

The Supreme Court referred the questions to the Commission of Appeals, Section A, for their opinion thereon, and here adopt same and direct it to be certified as the answer to the questions.

*Smith & Smith* and *Richard Mays,* for appellant.

The issues submitted, as well as explanatory instructions in connection therewith, unduly and unlawfully emphasized that the burden of proof was upon appellant to prove the facts entitling him to a recovery. Sunlite, etc. Co. vs. Justice, 257 S. W., 579; Dallas Waste Mills v. Texas Coke & Linter Co., 228 S. W., 118; Dye v. Railway Co., 127 S. W., 893; State v. Haley, 142 S. W. 1003.

The giving of appellee's special charge No. 3 was erroneous for the reason that it amounted to a general instruction to the jury, whereas the case had been submitted upon special issues. City of Sweetwater v. Biard Development Co., 203 S. W., 801; Moore

v. Coleman, 195 S. W., 212, par. 8, and authorities cited on motion for rehearing, end of opinion; Pacific Express Co. v. Rudman, 145 S. W., 268; Southerland v. Railway, 40 S. W., 193; Crosby v. Stevens, 184 S. W., 705; LaGrone v. Railway, 189 S. W., 99; Railway v. Jones, 175 S. W., 488; Cole v. Crawford, 69 Texas, 124; Moore v. Pierson, 100 Texas, 113.

The giving of appellee's special charge No. 3 was erroneous because (a) it does not state the law applicable to the facts; (b) is a charge upon the weight of the evidence; (c) by its phraseology tends to convey to the jury the idea that the court thinks that appellee should recover; (d) is confusing when applied to the several questions submitted to the jury; and (e) is practically a peremptory instruction to the jury to find for appellee and against appellant.

*Callicut & Johnson* and *Sharp, Tirey & Gray*, for appellees.

The court was correct in giving appellees Special Charge No. 3, because without such instructions the jury would have no limit or rule to govern them in reaching true and correct answers to the special issues submitted by the court. Railway Co. v. Vogt, 181 S. W., 841; Railway Co. v. Speer, 212 S. W., 762.

The issues submitted to the jury in this case were many, and the manner in which the court instructed the jury as to the burden of proof upon appellant was necessary, and could not, and did not, injure appellant, and the burden is upon him to show that it did injure him. Rule 62 A; Stephenville N. & S. T. Ry. Co. v. Walton, 160 S. W., 651; Carter v. Missouri, K. & T. Ry. Co. of Texas, 160 S. W., 987; Missouri, K. & T. Ry. Co. of Texas v. Perryman, 160 S. W., 406; Ratto v. Bluestine, 19 S. W., 338; Brady v. Georgia Home Ins. Co., 59 S. W., 915; Martin v. St. Louis S. W. Ry. Co., 56 S. W., 1012; Beaumont, S. L. & W. R. Co. v. Olmstead, 120 S. W., 597; Posener v. Harvey, 125 S. W., 357; Sonka v. Sonka, 75 S. W., 325. See note 34 under Vernon's Texas Civil and Criminal Statutes 1922 supplement, and the authorities therein cited.

MR. JUDGE BISHOP delivered the opinion of the Commission of Appeals, Section A.

This case is submitted on certified questions from the Court of Civil Appeals for the Tenth Supreme Judicial District, the statement and questions certified being as follows:

"This suit was instituted by appellant, B. W. Owens, against Navarro County Levee Improvement District No. 8 and the

trustees and incorporators thereof, to recover damages which he claimed had been occasioned by appellees in the construction of a levee on Chambers and Richland Creeks in Navarro County. The cause was submitted to a jury and resulted in a verdict for appellant for $735.00, and he, not being satisfied therewith, appealed.

"Appellant owned about 1,100 acres of land in one tract, a part of which lies contiguous to the levee, constructed by appellees. Appellant claimed that by reason of the change made in Richland and Chambers Creeks by the building of the levee, appellees took a small portion of his land and caused water to flow over the remainder thereof, and that by reason thereof 350 acres of his land had been rendered useless and the rental value of the remainder had been damaged $5.00 per acre per annum, and that the value of the remainder of the land had been diminished $20.00 per acre. He claimed that by the building of the levee he had lost his pasturage and part of his cotton crops for the years 1921 and 1922.

"The cause was submitted in the trial court on special issues and instructions, some of them being given at the request of the parties. Said special issues and instructions given, together with the answers returned by the jury, are as follows:

" 'Gentlemen of the jury:

" '(a) You will find and answer the following questions as hereinafter submitted to you, which will constitute your verdict in this case:

" 'Question No. 1. How much land, in acres, was taken from the plaintiff, B. W. Owens, by the defendant Levee District in cutting the ditch out of Richland Creek into the new channel, that is, how much was used or destroyed or rendered valueless in cutting said relief channel out of Richland Creek? Answer in acres.

" 'Answer: Six-tenths of one acre, (6-10 of 1 acre).

" 'Question No. 2. What was the reasonable market value of said land referred to in Question No. 1 at the time said relief channel was cut? Answer in dollars.

" 'Answer: Twenty-five dollars.

" 'Question No. 3. Excluding from your consideration the land referred to in Question No. 1, you will answer the following question: Has any of the cultivated land, or uncultivated land of B. W. Owens, which lies in the bottom, been damaged by reason of and as a result of the construction of the levee and

the cutting of said channel by said levee district? Answer yes or no.

" 'Answer: Yes.

" 'In answering the above question No. 3, you will take into consideration all of the circumstances and conditions as they existed on Richland and Chambers Creeks along this particular territory, before the construction of said levee improvements, and will take into consideration all the circumstances and conditions as they exist along said territory after said levee improvements had been constructed, and if you believe from a preponderance of the evidence that the land of the plaintiff has been damaged by reason of the construction of said levee improvements, then you will answer said question 'Yes.' But unless you believe that said land has been damaged by said levee improvements, you will answer said question 'No.' You are further instructed that even though you may believe that the land of the plaintiff has been damaged within the last two years by water, that unless you further believe from a preponderance of the evidence in this case that said damages, if any, were occasioned by the improvements constructed by said levee district, and would not have occurred if said improvements had not been constructed, you will answer said question 'No.'

" '(b) You are instructed that if you have answered question No. 3 'Yes,' and in that event only, you will find and answer the following question:

" 'Question No. 4. How many acres, if any, of the cultivated bottom land of plaintiff has been damaged by reason of the construction of said levee improvements by said district? Answer in acres.

" 'Answer: 35 acres.

" 'Question No. 5. What was the reasonable market value of said cultivated bottom land immediately before the construction of said levee improvements by said district? Answer in dollars per acre.

" 'Answer Thirty Dollars per acre.

" 'Question No. 6. What was the reasonable market value per acre of said cultivated bottom land immediately after the completion of said levee improvements by said district? Answer in dollars per acre.

" 'Answer: Ten Dollars per acre.

" 'Question No. 7. How many acres, if any, of the uncultivated bottom land of plaintiff has been damaged by reason of the con-

struction of said levee improvements by said district? Answer in acres.

" 'Answer: None.

" 'Question No. 8. What was the reasonable market value per acre of the plaintiff's uncultivated bottom land immediately before the construction of said levee improvements by said levee district? Answer in dollars per acre.

" 'Answer: Twenty Dollars per acre.

" 'Question No. 9. What was the reasonable market value per acre of the plaintiff's uncultivated bottom land immediately after the completion of said levee improvements by said levee. district? Answer in dollars per acre.

" 'Answer: Twenty dollars per acre.

" 'Question No. 10. How many acres of plaintiff's cultivated bottom land failed to produce a crop in 1922, as a result of the construction or partial construction of said levee improvements by said district, if any?

" 'Answer: None.

" 'Question No. 11. How many acres of plaintiff's cultivated bottom land failed to produce a crop in 1921, as a result of the construction or partial construction of said levee improvements by said district, if any?

" 'Answer: None:

" 'Question No. 12. What was the reasonable rental value of said land referred to in Questions Nos. 10 and 11 in dollars per acre per year?

" 'Answer: None.

" 'Question No. 13. How many acres of uncultivated land belonging to the plaintiff and situated in the bottom had the grass destroyed thereon in 1921 by reason of the construction of said levee improvements by said district?

" 'Answer: None.

" 'Question No. 14. How many acres of uncultivated land belonging to plaintiff and situated in the bottom had the grass destroyed thereon in 1922 by reason of the construction of said levee improvements by said district?

" 'Answer: None.

" 'Question No. 15. What was the reasonable rental value of said uncultivated land referred to in Questions Nos. 13 and 14 for pasture purposes per acre during the years 1921 and 1922?

" 'Answer: None.

" 'You are instructed that in answering Questions Nos. 10, 11, 12, 13, 14, and 15 that you will bear in mind the following in-

struction: You must believe from a preponderance of the evidence in this case that the failure to make a crop on said cultivated land, if any, or the destruction of the grass on said uncultivated land, if any, was caused by, and was a result of the construction of said levee improvements by said district, and even though you may believe that certain land was not cultivated and could not have been cultivated, or that the grass was destroyed on the uncultivated land of plaintiff, unless you further believed from a preponderance of the evidence in this case that the construction of said levee improvements by said district in whole or in part was the cause which prevented the cultivation of said land or caused said grass to be destroyed you will answer said questions 'No.'

" '(c) You are instructed that by the term "reasonable market value" as used in this charge, is meant the price that said land w/ould sell for cash or its equivalent at the particular time mentioned.

" '(d) You are instructed that by the term "reasonable rental value" means the price or amount of money that said cultivated land would have paid the plaintiff if a crop had been raised thereon, at a rent of 1-3 of the grain and 1-4 of the cotton raised on said land. That as applied to the uncultivated land, the term "reasonable rental value" means the amount of money that said land would have rented for pasture purposes during said years.

" '(e) You are instructed that the burden of proof is on the plaintiff, B. W. Owens, to prove his case and right to recover damages by a preponderance of the evidence, and in determining this you will take into consideration all the evidence introduced before you.

" '(f) You are instructed that you are the exclusive judges of the facts proven, of the credibility of the witnesses and of the weight to be given their testimony. But the law you will receive from the Court, in the charges givén you, and be governed thereby.

" 'You will not resort to lot or chance in arriving at your verdict. The form of your verdict you will find below, which must be signed by your foreman.'

"SPECIAL CHARGE AND INSTRUCTION NO. 3 GIVEN BY TRIAL COURT
AT REQUEST OF DEFENDANT.

" 'Gentlemen of the Jury:

" 'If you believe from the evidence that defendants' act ·in cuttíng said channel or placing said spoil bank or constructing

said levee was a source of injury or damage to plaintiff's lands or crops, or grass, but also believe from the evidence that plaintiff's crops or grass or land would have been damaged, independent of any effect of the cutting of said channel or the placing of said spoil bank or the construction of said levee, and if you cannot distinguish between the damage caused plaintiff by the general overflow and the damage caused by water, if any, cast upon plaintiff's crops, pasture or grass or lands by reason of cutting said channel or placing said spoil bank or constructing said levees, you must find for the defendant on these issues, and if you so believe you will answer Questions Nos. 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, and 15 against said plaintiff. And the burden is upon plaintiff to show by a preponderance of evidence that his crops, grass or lands were damaged by reason of the cutting of said channel, the placing of said spoil bank or the construction of said levee.'

"SPECIAL CHARGE AND INSTRUCTION NO. 1 GIVEN BY TRIAL COURT
AT REQUEST OF PLAINTIFF.

" 'Gentlemen of the Jury:

" 'You are instructed in connection with Questions Nos. 3, 5, 6, 7, 8, and 9 as follows:

" 'In considering the damages to the land, if any, you will find (1) the market value of the land before the levee construction began; and (2) you will find the value of the land after the completion of the levee improvements. And in this connection you will take into consideration all evidence and facts relating to damages to said land, if any, sustained during the levee construction, since its completion to this time, and the reasonable and probable damages which it will sustain hereafter resulting from the overflow of water upon plaintiff's said land resulting from said levee construction.'

"Appellant objected to the submission of the Special Charge and Instruction No. 3 given by the court at the request of appellees, because: (1) it does not state the law applicable to the facts; (2) it is confusing when applied to the several questions submitted to the jury; (3) it unduly emphasizes that the burden of proof is upon the plaintiff to show by a preponderance of the evidence his right to recover; (4) because said special charge amounts to a general instruction on the case whereas the court had submitted the cause upon special issues.

"Appellant objected to the court's charge as a whole, together with the special charges and explanatory instructions,

because it unduly emphasized that the burden of proof was upon plaintiff to prove the facts entitling him to recover.

"The evidence in this case shows that appellant's land had been subject to overflow for a long number of years prior to the construction of the levee, and there was some evidence tending to show that the overflow waters had been higher on appellant's land before the levee was constructed than thereafter, and that the high water in 1922, which appellant claims did the greatest amount of damage, was higher than it had ever been in the history of the country, and that all the damage to appellant's land that was done would have been done regardless of the fact that such levee improvements had been constructed. The issues submitted by the court were all raised by the testimony.

"At a former day of this term we reversed the judgment of the trial court, on the ground that the Special Charge and Instruction No. 3, requested by appellees and given by the court, should not have been given, and we sustained appellant's contention that the court's charge, with its explanatory instructions, did unduly and unlawfully emphasize that the burden of proof was upon appellant to prove the facts entitling him to recover. A motion for a rehearing is pending in this court, and there being some doubt in our minds as to the soundness of our holdings on the above questions, and by reason of an apparent conflict in our holdings with the Court of Civil Appeals for the Third District, in the case of Fort Worth & D. C. Ry. Co. v. Speer, 212 S. W., 762, we deem it proper to certify certain questions to the Supreme Court before passing upon the motion for a rehearing.

"We respectfully submit to the Honorable Supreme Court of this state for its determination upon the facts hereinbefore set out, the following questions:

I.

"Were we in error in holding that the court's charge, taken in connection with the explanatory instructions, unduly and unlawfully emphasized that the burden of proof was upon appellant to prove the facts entitling him to recover?

II.

"There being evidence in this case tending to show that a part of the damage complained of by the plaintiff would have been suffered from overflow waters if the levee improvements in question had never been constructed, and that a part of such damage

resulted from additional waters caused to flow onto or over plaintiff's land by such levee improvements so constructed, was it proper for the court to instruct the jury, in substance, that if they could not distinguish between the damage caused by the general overflow and the damage caused by water cast upon plaintiff's land by reason of such levee improvements, they should answer all questions pertaining to damages against the plaintiff?

### III.

"Were we in error in holding that the trial court committed error in giving appellees' Special Instruction No. 3?"

The measure of damages for permanent injury to the land is the difference in the market value just prior to the time of the levee improvements and immediately subsequent to such improvements. This damage arises from the fact that the land will be subjected to overflow by reason of the improvements, and suit could be filed and recovery had even prior to any actual overflow. The amount of the reduction in the value of the land caused by the improvements made would not depend solely upon the extent of the overflow between the time the improvements were begun and the time of the trial of the case. So, if from the evidence in this case, the jury believed that the land had been damaged on account of the water which was caused to flow thereon by reason of the improvements, the amounts of recovery would depend on proof of market value, and not on whether they could distinguish between the damages caused by the improvements by reason of water cast upon the land thereby, and that which would have resulted from overflow had the levee improvements not been constructed.

We think the charge is erroneous for the reason that it is misleading. The inability to distinguish from the evidence the exact amount of the damages caused by reason of the construction of the levee improvements from that which would have been sustained had such improvements not been constructed would not furnish a sufficient reason to deny a recovery. It is only where under the evidence the amount of recovery is wholly left to speculation and conjecture that recovery will be denied. If, from a preponderance of the evidence, the jury believes that the plaintiff has been damaged as alleged in his petition, the amount must be left to their reasonable discretion, and the court is not warranted in prescribing any fixed rule as is attempted in this charge.

It is only when it is necessary to enable the jury to properly

pass upon and render a verdict on the issues submitted that the court is by statute required to submit explanations in regard to special issues. If the issues submitted are such that explanations are not necessary, none should be given. The issues to which this special charge was by its terms made applicable required no explanation to enable the jury to pass upon and render verdict thereon.

The expression "if you cannot distinguish between the damages" may have been construed by the jury to mean that if the exact proportion of the damages caused by the levee improvements was not under the evidence made certain to the extent that same was susceptible of mathematical calculation, no finding of damages was warranted. We do not think a charge subject to this construction is the law. It is only where the state of the evidence is such that the amount of damages resulting from the levee improvements is left wholly to speculation and conjecture, and for this reason are not distinguishable from the damages which would have otherwise resulted, that the jury is precluded from rendering a verdict assessing damages. If, from the evidence, the amount of the damages could be reasonably inferred, the question of damages is one for the jury, and a charge which might lead the jury to believe otherwise is erroneous.

Article 1985, Revised Civil Statutes 1911, provides that: "It shall be the duty of the court, when it submits a case to the jury upon special issues, to submit all the issues made by the pleadings." Article 1984a, Vernon's Sayles' Texas Civil Statutes 1914, Acts 1913, p. 113, Sec. 1, provides that: "Such special issues shall be submitted distinctly and separately, and without being intermingled with each other, so that each issue may be answered by the jury separately." The issues as to whether plaintiff's crops or grass or land would have been damaged independently of any effect of the construction of the levee improvements, though facts in issue under the pleadings, were not submitted so that each issue could be answered separately as required, but were intermingled. By this special charge no specific answer was required to either of these issues, but the jury were instructed that if they believed the land or crops or grass would have been damaged independently of the effect of the construction of the levee improvements, and could not distinguish between the damage so caused, and that caused by the levee improvements, they should make such answer to the special issues relating to damages as would in law defeat a recovery.

This charge was given in violation of the statutory requirements above quoted. It is a general charge on the law arising on the facts, and for this reason should not have been given in a case submitted on special issues. It directs the jury to apply the law to the facts in making answer to special issues, whereas it was the duty of the court to ascertain from the jury the facts established by the evidence, and then apply the law to the established facts. Connellee v. Neese, 266 S. W., 502; Anderson & Co. v. Reich, 260 S. W., 162; Worden v. Kroeger, 219 S. W., 1094; Ry. Co. v. Harrington, 235 S. W., 188.

In this special charge, as well as in the charge given in connection with issue No. 3, and that given in connection with issues Nos. 10, 11, 12, 13, 14, and 15, the court repeatedly instructed the jury that the burden of proof was on the plaintiff to show the facts which would entitle him to a favorable answer. Undue prominence was given the burden resting upon the plaintiff. We think the effect of these charges was to cast a doubt or suspicion upon the evidence bearing upon the damages sustained as a result of the levee improvements. These instructions were calculated to impress the jury with the idea that there was some doubt in the mind of the judge of the court as to whether the evidence would sustain answers favorable to the plaintiff. Dallas Waste Mills v. Texas Cake & Linter Co., 228 S. W., 118.

We think the questions certified should all be answered in the negative.

The opinion of the Commission of Appeals answering certified questions is adopted and ordered certified to the Court of Civil Appeals.                           *C. M. Cureton*, Chief Justice.